IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PUSHPA DEVI,

    Plaintiff,

v.

EDUARDO AGUIRRE, JR., Director, United States Citizenship and Immigration Services,

    Defendant.

No. C 05-01179 JSW

**NOTICE OF TENTATIVE RULING AND QUESTIONS**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING QUESTIONS FOR THE HEARING SCHEDULED ON **October 14, 2005 at 9:00 a.m.**:

The Court has reviewed the parties' memoranda of points and authorities and, thus, does not wish to hear the parties reargue matters addressed in those pleadings.  If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing.  If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing.  *See* N.D. Civil Local Rule 7-3(d).  The parties will be given the opportunity at oral argument to explain their reliance on such authority.

The Court tentatively GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross motion for summary judgment.

The parties shall have 15 minutes to address the following questions:

1. Although the asylum approval letter dated June 18, 2002 stating that Plaintiff was eligible for asylum "reflects a grant of asylum *nunc pro tunc* back [June 27, 1996,] to the date of [her] arrival in the United States," the same letter indicates that Plaintiff "may request derivative status for any spouse . . . within 2 years of the date you were granted asylum status." Further, the approval letter clearly indicates that Plaintiff was granted asylum status pursuant to § 208(a) of the Immigration and Nationality Act.

    a. If the Court were to adopt Defendant's position that Plaintiff was ineligible to request derivative status for her husband because more than 2 years had elapsed since the change in her asylum status, what meaning can the Court afford the derivative asylum status portion of the letter?
    b. Defendant contends the letter enumerating certain benefits Plaintiff could obtain as an asylee was sent in error. (Defendant's Motion at 3.) Where in the record does the Service admit such error? Even if the letter were sent in error, how can Defendant claim that Plaintiff is not entitled to seek benefits under 8 U.S.C. § 1158(b)(3)(A)?
    c. Under Defendant's analysis, would it not have been logically impossible for Plaintiff ever to have been eligible for the benefits of derivative asylum status for her husband?

2. It is apparent that the policy of granting asylum *nunc pro tunc* was adopted as a legal fiction in order to benefit qualified children applicants who would otherwise age out of their parents' approved asylum applications. Where is there evidence of any intent by the Service otherwise to affect, especially negatively, the adjudication of an asylum case?

3. If Defendant believes that because Plaintiff is now a lawful permanent resident, Plaintiff's husband is otherwise eligible under 8 U.S.C. § 1153(a)(2)(A), why has the Service pursued this matter?

4. Are there any other issues the parties wish to address?

**IT IS SO ORDERED.**

Dated: October 12, 2005

/s/ Jeffrey S. White
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE